THOMAS ARGO SMITH, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Smith v. Commissioner
Docket No. 27364-89
United States Tax Court
T.C. Memo 1991-634; 1991 Tax Ct. Memo LEXIS 682; 62 T.C.M. (CCH) 1576; T.C.M. (RIA) 91634; December 19, 1991, Filed *682 Decision will be entered under Rule 155. Thomas Argo Smith, pro se. Frederick J. Lockhart, Jr., for the respondent. SCOTT, Judge. SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined deficiencies in petitioner's Federal income tax and additions to tax for the calendar years 1984 and 1985 as follows: Additions to Tax
Year
Deficiency
Sec. 6653(a)(1) [1]
Sec. 6653(a)(2)
Sec. 6661
1984
$ 33,402
$ 1,670
*
$ 8,351
1985
155,721
7,786
*
38,930
The parties have disposed of some adjustments *683 made by respondent in the notice of deficiency by agreement, leaving for decision the following issues: (1) Whether assessment of income tax deficiencies against petitioner for the calendar years 1984 or 1985 is barred by the statute of limitations or was the notice of deficiency issued for the year 1985 within the 3-year period from the date of the filing of petitioner's income tax return for that year and the notice of deficiency for the year 1984 timely because it was issued within 6 years from the date of the filing of petitioner's income tax return for 1984, which omitted from gross income an amount properly includable therein which is in excess of 25 percent of the amount of gross income reported; (2) whether the following items of income which were not reported by petitioner are properly includable in his taxable income for the years indicated: Type of Income
1984
1985
Salary
$ 28,850 -
Schedule C/Gross Receipts
606 $ 1,064
Other Income
(1,838)
99,616
Capital Gains and Losses
2,362 13,082
Receipts from Mobile Home Sale
-
4,956
(3) whether petitioner has shown that he is entitled to deductions in excess of those conceded by respondent for the years *684 1984 and 1985; (4) whether petitioner is entitled to a claimed charitable contribution deduction for 1984 and claimed itemized deductions on Schedule A for 1985 other than taxes of $ 1,200 and interest expense of $ 2,594 which are conceded by respondent; (5) whether the energy credit carryover in the amount of $ 1,915 claimed by petitioner on his 1984 return was properly disallowed by respondent for lack of substantiation; (6) whether petitioner should have reported self-employment tax on Schedule C income in 1984 and an increased amount of self-employment tax on Schedule C income in 1985; and (7) whether petitioner is liable for the substantial understatement addition to tax pursuant to section 6661 for 1984 and 1985 and for additions to tax for negligence or intentional disregard of rules or regulations pursuant to section 6653(a)(1) and (2) for 1984 and 1985. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioner resided in Aurora, Colorado, at the time of the filing of his petition in this case. Petitioner filed his Federal income tax return for the calendar year 1984 on August 15, 1985, having requested an automatic 4-month extension. *685 Petitioner's Federal income tax return for the calendar year 1985 was due to be filed on or before April 15, 1986. However, petitioner received an extension of time for filing his return to October 15, 1986. Petitioner's Federal income tax return for the calendar year 1985 was signed on October 15, 1986, and was mailed in an envelope properly addressed on that date. Therefore, his 1985 return is deemed to have been filed pursuant to section 7502 on October 15, 1986. The statutory notice of deficiency determining deficiencies in petitioner's Federal income taxes for the calendar years 1984 and 1985 was mailed to petitioner on October 11, 1989. Petitioner on his 1984 Federal income tax return reported total gross income, including that incorporated by reference from S & G Placer Mining Limited Partnership (S & G), of $ 73,727. During the calendar year 1984, petitioner received checks from Overthrust Oil Royalty Corporation (OVOR), a publicly traded corporation involved in oil and gas exploration, of which petitioner was president and a major stockholder, totaling $ 28,850. These amounts were originally shown on the OVOR books as advances. Later the corporation's accounting *686 firm changed the charge of these checks from advances to salary expenses. This change of designation on the books was tested and accepted by Deloitte Haskins and Sells, OVOR's public accounting firm, and was shown on the 1984 Form 10-K, Annual Report to the Securities and Exchange Commission (SEC), in the general and administrative expense category. At the time the checks to petitioner totaling $ 28,850 were charged to salary expense on OVOR's books the corporation's advances receivable account was credited with the amount charged to salary and also was credited with similar amounts changed from advances to salary for other officer employees. OVOR kept its books and reported its income on a fiscal year ended September 30. For its fiscal year ended September 30, 1984, a total of $ 35,850 of checks drawn to petitioner were reclassified from advances to salary. However, one check in the amount of $ 7,000, which was so reclassified, had been paid to petitioner in the year 1983. During its audit of the books of OVOR, Deloitte Haskins and Sells verified that a check to petitioner in the amount of $ 7,500 dated January 31, 1984, was properly reclassified as salary and also verified *687 certain of the checks to other officer-employees of OVOR reclassified as salary during the quarter January 1 through March 31, 1984, to substantiate that the amounts were properly charged to salary. The verification included checking the minutes of the board of directors meeting which had been presented to petitioner as president of OVOR. Petitioner verified the minutes as to the payment and the authorization of the salary payment to him. Footnote 3 of the audit work papers prepared by Deloitte Haskins and Sells relating to the test they did of the books with respect to salary expense for OVOR's fiscal year ended September 30, 1984, states: Amount represents a salary expense. Traced to A/P voucher. Obtained evidence of employment by examining employment records, or through inquiry. Per discussion w/ Thomas Smith - President, obtained salaries authorized by the Board (also examined minutes of Board meetings to verify salaries). Because of the client's poor financial position during the year, salaries were not paid on a consistent basis. According to Tom Smith, the company President, the amount paid was authorized by him. Amt. appears reasonable and properly accounted for. *688 No exceptions noted.
In the 1984 OVOR annual report and in the Form 10-K for 1984 filed with the SEC the statement is made that "Management of the company has been foregoing salary to reduce operating expenses." An adjusting entry on the general ledger of OVOR for the quarter ending March 31, 1984, which was directed by Mr. Bob Pierce, a then officer and director of OVOR, reclassified $ 36,400 from advances receivable to salaries. When a Mr. Burdick, the corporate bookkeeper, reviewed the corporate books for the corporate fiscal year ended September 30, 1984, he approved the reclassification of the advances to salary because he saw no evidence of intent to repay, no actual repayment, and no detail of any expenses charged to the advances. The preliminary prospectus of OVOR dated November 24, 1981, sets forth the salary to be paid to officers. Petitioner's salary as president and chief executive officer of OVOR is shown as $ 65,000 annually. During the years 1984 and 1985, petitioner incurred some expenses for traveling to various oil wells and certain other travel, including a trip to New York on business of OVOR. Petitioner had no records detailing the cost of any of these *689 trips, name or cost of the hotels where he stayed on the trips, or the cost of any other expenses, such as expenses for food or local transportation, which he incurred on the trips, or any other supporting documents to corroborate his testimony about the travel. Although OVOR did not file a corporate income tax return for its fiscal year ended September 30, 1984, it did file a Form 10-K with the SEC and did prepare an annual report for this period. On January 21, 1986, OVOR filed a Chapter 11 proceeding with the United States Bankruptcy Court in Salt Lake City, Utah. The bankruptcy court assumed jurisdiction of the case, but left the then existing directors and officers, including petitioner, in possession subject to supervision of the court. The bankruptcy proceeding of OVOR was still continuing at the date of the trial of this case. In March 1987, the OVOR debtor-in-possession was replaced with Mr. Roger Nelson, an independent trustee, by the bankruptcy court. After his appointment, Mr. Nelson, as trustee, had corporate income tax returns for OVOR prepared for its taxable years ended September 30, 1985 and September 30, 1986. Mr. Nelson also verified that certain checks drawn *690 by OVOR to Westko Securities, Inc. (Westko), in 1985 were for repayment of loans. During the years here in issue, petitioner also participated individually in producing oil and gas properties and filed Schedules C with his 1984 and 1985 income tax returns reporting income and expenses from these ventures. In 1983 a partnership, S & G, of which petitioner was one of two general partners, was formed. S & G was a Colorado limited partnership involved in mining exploration, acquisition, and development. S & G filed a partnership return of income for the calendar year 1983. A partnership return of income for the calendar year 1984 was prepared but not filed. A Form K-1 attached to the 1983 partnership return in the name of Thomas A. Smith shows him as a general partner of S & G with a profits interest of 0.5 percent, a loss interest of 0.5 percent, and an ownership of capital interest of 0.5 percent. This K-1 shows a capital contribution during the year by Thomas A. Smith of $ 100 and an ordinary loss allowable to him of $ 663.88. There are also Forms K-1 attached to the 1983 return in the name of other "Smiths" which appear to be members of petitioner's family. The partnership *691 return of income for 1984 of S & G does not contain a K-1 with respect to petitioner, but does contain Forms K-1 with respect to other Smiths that appear to be members of petitioner's family. The 0.5 percent interest of petitioner in the profit and loss and ownership of S & G shown on the K-1 for 1983 is in accordance with the information shown in the partnership agreement as to petitioner's interest in the partnership until all limited partners had received return of all their capital contributions. The $ 100 capital contribution is the amount stated as contributed by petitioner in the partnership agreement. Petitioner on Schedule E of his income tax returns for the calendar years 1983, 1984, and 1985 claimed deductions for depreciation, losses, and unreimbursed expenses attributable to S & G. For the taxable year 1985 petitioner claimed a loss from the sale of a mobile home that was the property of S & G and deducted detective fees with reference to alleged stolen partnership property. As of the date of the trial of this case, litigation concerning recovery of damages for the stolen partnership property was still in progress. During 1984 and 1985, petitioner owned all the *692 capital stock of Westko, a Colorado corporation engaged in the securities brokerage business. On December 11, 1984, Westko sold substantially all of its assets to Allied Capital Group, Inc., for an agreed purchase price of $ 50,000. The amount agreed to be paid in 1984 was $ 5,000. On December 20, 1984, Allied Capital issued a check payable to petitioner for $ 5,000 to discharge this obligation, and the check was deposited to petitioner's account. Petitioner had contributed 800,000 shares of OVOR stock to Westko in return for the issuance of all of the Westko stock. The price of the 800,000 shares of OVOR stock paid by petitioner as shown in the various reports filed by OVOR was 1 cent a share. Respondent in his notice of deficiency showed the amount of the sales price received by petitioner in 1984 as $ 6,000 composed of the $ 5,000 and an amount respondent determined was $ 1,000 received for options to purchase the assets. For the years 1984 and 1985 petitioner received as "owner's gross" totals of monthly disbursements from J. Burns Brown based on his interest in oil and gas properties that J. Burns Brown was operating of $ 16,227 and $ 12,981, respectively. On his return, *693 petitioner reported receipts from this source of $ 15,621 for 1984 and $ 11,917 for 1985, which is a reporting of $ 606 and $ 1,064 for the years 1984 and 1985, respectively, less than the amount actually received. Petitioner on the Schedules C attached to his 1984 and 1985 returns claimed total expenses from his oil and gas operations of $ 27,666 for 1984 and $ 6,908 for 1985. Respondent has also conceded the litigation expenses claimed by petitioner on Schedule C for 1984 and $ 7,340 of the 1984 interest expenses of $ 13,588 claimed by petitioner on his Schedule C. During 1985, OVOR drew checks to petitioner on the following dates in the amount indicated: Date
Amount of Check
March 26, 1985
$ 14,000
March 1985
5,000
March 1985
3,000
March 1985
2,780
March 27, 1985
6,000
August 10, 1985
3,000
August 13, 1985
6,000
August 29, 1985
1,000
September 12, 1985
100
September 30, 1985
1,500
October 9, 1985
1,500
October 17, 1985
850
October 30, 1985
950
November 7, 1985
500
December 1, 1985
500
The $ 14,000 check drawn to petitioner was a check drawn to him to pay over to a Mr. Thomas Harrison, who was an oil engineer. Mr. Harrison was doing rig work in OVOR's *694 oil field, and the $ 14,000 was paid by petitioner to Mr. Harrison on account of work he had done for OVOR. The March 27, 1985, check to petitioner for $ 6,000 was marked "expenses Jan. Feb. March 1985." The August 10, 1985, check for $ 3,000 had a notation "expenses." The August 13, 1985, check for $ 6,000 had a notation "return of partial expenses." The $ 1,000 check dated August 29, 1985, had a notation "expense refund Parleat." The $ 100 check dated September 12, 1985, has a notation "expenses trip to Vernal, UT." The $ 1,500 check dated September 30, 1985, has a notation "expenses," as does the $ 1,500 check dated October 9, 1985. The $ 850 check dated October 17, 1985, has a notation "NY expenses." The $ 950 check dated October 30, 1985, has a notation "annual meeting." The $ 500 check dated December 1, 1985, has a notation "expenses," and the $ 500 check dated November 7, 1985, has a notation "oil field trip to Vernal, Utah." The major portion of expenses, which petitioner claims to have incurred during the year 1985, were travel expenses. The following schedule shows checks written on the checking accounts of OVOR payable to Westko, cashed, deposited, or negotiated by petitioner *695 in the taxable year 1985, together with the date of the check and indication of what the item covered by the check was for: Date
Amount of Check
Check For
3/25/85
$ 10,000
Repayment $ 10,000 loan
7/7/85
6,000
Payment
9/30/85
5,000
Payment partial on note
10/27/85
5,000
Repay loan
10/29/85
2,500
Loan repayment
12/1/85
2,200
Note repayment
Except for the check dated July 7, 1985, for $ 6,000 to Westko marked payment, all the checks drawn by OVOR to Westko were in repayment of loans to Westko. In February 1985, petitioner cashed a check for $ 2,000 drawn by OVOR to use as a deposit on a vehicle which OVOR was negotiating to buy from Courtesy Ford, Inc. The purchase of the vehicle was not carried through, and petitioner received a $ 2,000 check from Courtesy Ford, Inc., which was deposited in an account in the name of petitioner's wife, Adelaide C. Smith. Of the checks listed above drawn by OVOR to petitioner during 1985, all except the $ 14,000 check, which petitioner used to pay an obligation of OVOR to Mr. Harrison, were income to petitioner. The ones that were income for expense reimbursements were not in payment of expenses for which petitioner had any documentation *696 to corroborate his testimony with respect to expending the funds, and petitioner's testimony gave no details of the nature of the expenditures. The total of the checks which represent income to petitioner drawn by OVOR to petitioner in 1985 is $ 32,680. Of the OVOR checks drawn to Westko only the one drawn July 7, 1985, for $ 6,000 represents income to petitioner. The remainder represent repayments of loans by OVOR to Westko. Petitioner received a $ 1,000 check of OVOR drawn on Metrobank which is listed in the cash journal of OVOR. This check appears to have been drawn in 1983. The total amount received by petitioner directly from OVOR or from OVOR through Westko in 1985, which is includable in his income, is $ 37,680. During the calendar year 1985, Westko drew a check on Market National Bank payable to D. Jafar for $ 37,000. The check is dated January 23, 1985, and is marked for consultant fees. Mr. Jafar was a consultant with respect to Middle East Oil Operations, and the $ 37,000 was a payment to him of consultant fees to obtain oil concessions in the Middle East for OVOR. Mr. Jafar lent the $ 37,000 he received as consultant fees to petitioner, and petitioner gave him *697 a note for the loan. Westko had a cashier's check dated February 8, 1985, in the amount of $ 5,300 drawn payable to D. Jafar. This check is endorsed "pay to the order of Thomas A. Smith, D. Jafar, Thomas A. Smith, Pay to the Order of Bruer Capital, Bruer Capital Corporation, For Deposit Only, 8 10 4448 49." The $ 5,300 represents income to petitioner making petitioner's total income from the various checks and unaccounted for income determined by respondent in the notice of deficiency a total of $ 45,980 for 1985, including a $ 2,000 check from Courtesy Ford, Inc., rather than the $ 99,616 contended for by respondent after some concessions. Respondent in his notice of deficiency recomputed petitioner's income primarily from records he obtained from third parties, including checks and bank statements obtained from various banks. Respondent disallowed most deductions for business expenses claimed by petitioner for lack of substantiation. Petitioner in his petition merely alleged that the statute of limitations had expired for both 1984 and 1985 and that the "IRS has failed to obtain documentation to substantiate its claims." OPINION From the facts we have found it is clear that *698 the notice of deficiency for the year 1985 was mailed within 3 years from the date of the filing of petitioner's return for the calendar year 1985. The record shows that the return was signed and mailed on October 15, 1986, and that the notice of deficiency was mailed to petitioner on October 11, 1989. Petitioner apparently is under the impression that the 3-year period runs from April 15, 1986, the due date of the return without consideration of the extension of time for filing that he obtained. However, section 6501(a) clearly states that the tax may be assessed within 3 years after the date the return is filed "whether or not such return was filed on or after the date prescribed". Therefore, clearly the statute of limitations had not run for the year 1985 when the notice of deficiency was mailed. Petitioner filed a petition from this timely notice of deficiency. Therefore, the running of the period of limitations on assessment and collection of the tax is suspended from the date the notice of deficiency was mailed until 60 days after the decision of this Court becomes final. Sec. 6503(a). Section 6501(e)(1)(A) provides that if the taxpayer omits from gross income an amount *699 properly includable therein which is in excess of 25 percent of the amount of gross income stated in the return, the tax may be assessed or proceeding in court for the collection of such tax may be begun without assessment at any time within 6 years after the return was filed. The record here shows that petitioner reported $ 73,727 of gross income on his 1984 return which was filed on August 15, 1985. The deficiency notice was mailed on October 11, 1989, which was within 6 years, but not within 3 years after the date of the filing of petitioner's 1984 return. Since respondent has the burden of showing that the 6-year period of limitations applies, , and cases there cited, he must show that petitioner had unreported income in excess of 25 percent of the income reported in order to establish that the notice of deficiency was timely mailed for the year 1984. Respondent takes the position that he has shown that petitioner received $ 28,850 of salary from OVOR in 1984, which was not reported on his return. The record shows that petitioner and other officers of OVOR were not regularly drawing salaries in 1984. However, *700 periodically checks were drawn to them including checks drawn to petitioner and marked advances. Checks totaling $ 28,850 drawn to petitioner and marked advances in petitioner's calendar year 1984 were reclassified as salary to petitioner. After consulting with petitioner, who was the president of OVOR, petitioner's bookkeeper and in-house accountants concluded that it was not petitioner's intent to repay the $ 28,850, and they reclassified this amount as salary with petitioner's consent. Petitioner's outside accountants in their certified statements filed with the SEC approved the reclassification of $ 28,850 as salary. Petitioner was a witness at the trial and when asked about the reclassification of the $ 28,850 as salary stated that these were advances or loans. However, even though his attention was directed to the statement of the bookkeeper, his in-house accountants, and the certified public accountants, that he agreed the amount was not to be repaid and therefore should be classed as salary, petitioner did not explain the adjustment. On the basis of this record which is set forth in some detail in our findings, we conclude that respondent has established that the $ 28,850 *701 of advances to petitioner which were later reclassified on the books of OVOR as salary to petitioner, were advances which were not intended to be repaid and were properly reclassified as salary. At the trial, petitioner testified that some of the advances made to him by OVOR in 1984 were for his travel expenses for OVOR and that it was for this reason he did not intend to repay the amount. On the basis of the evidence, we conclude that the $ 28,850 paid to petitioner in 1984 and reclassified as salary was salary paid to petitioner. However, if any of the amount was an advance to be used for travel expenses, the advance was income to petitioner, and it was incumbent on petitioner to show that he had deductible travel expenses. This he has not done. We therefore conclude that respondent has established that income was omitted from petitioner's 1984 return which was in excess of 25 percent of the income reported on that return so that respondent had 6 years from the date of the filing of petitioner's 1984 return within which to make an assessment of tax against petitioner. We therefore hold that the notice of deficiency was mailed to petitioner within the statutory period of limitations *702 with respect to the years 1984 and 1985. The remaining issues in this case are purely factual. Petitioner produced some records for the year 1984 and based on those records respondent made a substantial number of concessions. We have held that petitioner failed to report $ 28,850 of salary income in 1984. Petitioner has failed to show error in the remaining determinations made by respondent with respect to his 1984 income other than items conceded by respondent, except for showing that the cost of the OVOR stock to petitioner which he paid for the Westko stock, was 1 cent a share rather than the one-tenth of 1 cent a share used by respondent. On his 1984 return, petitioner showed a gain on the sale of some OVOR stock. He put under sales price an amount that would equal one-tenth of 1 cent a share for the OVOR stock. He put under basis an amount which appears to be the sales price of the stock. Based on the record as a whole, we conclude that if the one-tenth of 1 cent was entered as the basis of the OVOR stock, the amount was in error. The weight of the evidence, including audited reports of OVOR, is that petitioner's basis in this OVOR stock was 1 cent a share. Therefore, *703 in computing the 1984 gain on the installment sale of Westko's assets, petitioner's basis in the OVOR stock paid for the Westko stock is 1 cent a share. We sustain respondent's increase in petitioner's Schedule C gross receipts for 1984 by $ 606, his adjustment of other income by a reduction of $ 1,838, and his increase in capital gains and losses income by $ 2,362 because of petitioner's failure to show error in these adjustments. We also sustain respondent's disallowance of Schedule C losses to the extent he has not conceded these deductions for 1984 for lack of substantiation by petitioner. We sustain respondent's disallowance of the losses petitioner claimed from S & G in 1984 since petitioner has not shown that he is entitled to these claimed losses. To the extent these losses are from stolen property, petitioner has not shown that the loss is not recoverable. He has not shown the amount of losses, if any, of S & G, or the extent, if any, of his entitlement to deductions of these losses. We sustain respondent's disallowance of petitioner's 1984 claimed energy credit carryover and claimed charitable deduction for lack of substantiation. For the year 1985, petitioner produced *704 very few records. Also petitioner's brief which consists of two pages contains no analysis of the record. Petitioner states in his brief that the statute of limitations bars collection of the tax and that the IRS "has failed beyond reason to prove that any taxes are owed." However, from the testimony in the record and the documents that were received, we have determined that some adjustments other than items now conceded by respondent are justified by the record for the year 1985. on the basis of this record we determine that the amount of other income received by petitioner from various checks drawn by OVOR to him and to Westko and in some instances to other individuals was $ 45,980 including the Courtesy Ford, Inc., check for $ 2,000 rather than the $ 148,869 determined in the notice of deficiency or the $ 99,616 contended for by respondent at the trial and on brief. Petitioner testified that all of the amounts that we have concluded to be loan repayments to Westko were loan repayments. This testimony by petitioner was corroborated by the trustee in bankruptcy of OVOR that investigated these payments and concluded they were loan repayments that were permissible. We also have *705 concluded from the evidence in the record that the $ 37,000 check drawn to Mr. Jafar was for services rendered by Mr. Jafar and was a payment to him. Mr. Jafar did make a loan in the amount of $ 37,000 to petitioner. Petitioner gave a note for the loan, and it appears that this amount was in fact a loan to petitioner. Since there is no explanation in the record for $ 45,980 of the checks drawn by OVOR to petitioner or drawn by OVOR to other entities and endorsed over to and deposited by petitioner, we have concluded that these amounts were income to petitioner as determined by respondent in the notice of deficiency. We have also concluded that since the $ 2,000 deposited with Courtesy Ford, Inc., when it was the intent to buy a vehicle for OVOR came from OVOR, petitioner received income from OVOR when he received the check refunding this $ 2,000 and deposited it in his wife's account. The other large item that we have not discussed in detail is a $ 14,000 payment to a petroleum engineer, Mr. Harrison. Petitioner's testimony in the record is clear that this amount was paid to Mr. Harrison for services and, therefore, we did not include this $ 14,000 in petitioner' income. We *706 sustain respondent's determination with respect to the other adjustment he made to petitioner's 1985 income to the extent not conceded by respondent because of petitioner's failure of proof. The increase in petitioner's Schedule C gross receipts of $ 1,064 in 1985 and the disallowance of Schedule C deductions of $ 4,400 have been in no way explained by petitioner, and therefore he has failed to show error in respondent's determination in this regard. The net loss reported from S & G of $ 4,325 has not been shown to be properly deductible by petitioner. Not only has he failed to show any such loss by S & G, but has also failed to show that he would be entitled to deduct the amount of the loss or any portion of it. Other than the $ 100 which petitioner recovered through a loss claimed in 1983, he has failed to show any capital contribution to S & G and has failed to show to what extent he had any amounts at risk in S & G. There has been a total failure of proof on petitioner's part with respect to the claimed S & G losses. Petitioner has made no showing with respect to the claimed deduction of $ 4,956 from the sale of a mobile home which was property of S & G. Therefore, we sustain *707 respondent's determination in this regard. With respect to stolen property of S & G, if any in 1985, an action to recover the property was pending at the date of the trial of this case. Therefore, aside from any other problems with deducting this S & G loss, petitioner has not shown that recovery of the loss will not occur. At the conclusion of the trial, petitioner stated that he had available records for 1985 which would substantiate certain of the deductions he had claimed and certain of the capital gains and losses he had claimed on his 1985 return. The Court left the record open for 30 days for petitioner and respondent to review such records and stipulate to any adjustments that they agreed upon after the review. No stipulation was received by the Court, and respondent reported to the Court that petitioner had produced no records. Petitioner made no response with respect to why no stipulation had been filed, and the record was closed. We therefore sustain respondent's disallowance of deductions and his determination of capital gains and losses except to the extent he has conceded certain of the amounts set forth in the notice of deficiency. Petitioner has made no showing *708 with respect to any itemized deductions he claimed for 1985 which were disallowed by respondent and not conceded by him to be deductible. From the Schedule C filed by petitioner for his own business, it appears that he is liable for self-employment taxes in both 1984 and 1985. Therefore, based on the increases in petitioner's Schedule C income from his self-employment, adjusted if necessary by any social security taxes paid, we hold that self-employment tax should be properly computed by the parties in a recomputation of petitioner's tax liability on the basis of the various items of income and deductions as determined in this opinion. The burden is on petitioner to show error in respondent's determination of an addition to tax for negligence or intentional disregard of rules or regulations under section 6653(a)(1) and (2). Petitioner has made no such showing but, in fact, the inadequacy of petitioner's records and his failure to properly compute items of income and deductions clearly show that the deficiencies in his tax liability were due in full to negligence on the part of petitioner. We therefore sustain respondent's determination of the additions to tax under section 6653(a)(1) *709 and (2). . It appears that in each of the years here in issue there may be an understatement of tax in an amount greater than 10 percent of the amount shown as tax by petitioner on the return for that year or $ 5,000. This cannot be precisely determined until a recomputation is made of petitioner's tax liability for each of the years 1984 and 1985. If there is an understatement of tax in an amount greater than 10 percent of the amount shown on the return or $ 5,000 in either or both of the years here in issue, petitioner is liable for the addition to tax under 6661 as determined by respondent. The burden is on petitioner to show error in respondent's determination of the addition to tax under section 6661. See . Petitioner has made no showing of any substantial authority for the tax treatment which he claimed of the various items here involved on his returns. In fact, most of the items are purely items of substantiation or items of omission of income, which on their face without any further showing by petitioner, are not items for which substantial *710 authority exists for the claimed deduction or omission. Petitioner has totally failed to show error on the part of respondent with respect to the determination of the addition to tax under section 6661. Decision will be entered under Rule 155. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
*. The addition to tax under section 6653(a)(2) is 50 percent of the interest payable under section 6601 with respect to the portion of the underpayment which is attributable to negligence, which portion is the full amount of the deficiency for each of the taxable years 1984 and 1985. ↩